Alexander GEDDIS, Jr., Appellant,

v.

**UNIVERSITY OF DELAWARE,**
a corporation of the State
of Delaware.

No. 01–2298.

United States Court of Appeals,
Third Circuit.

Submitted Feb. 4, 2002.

Decided March 8, 2002.

Before SLOVITER, AMBRO, Circuit
Judges, and POLLAK, District Judge.*

* Hon. Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Alexander Geddis, Jr., a white male, filed this suit claiming that his former employer, the University of Delaware, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (2001), by firing him from his job because of his race and gender, and violated the implied covenant of good faith and fair dealing that exists under Delaware law by misrepresenting his employment record. The District Court granted summary judgment for the University and Geddis appealed.

### I.

### BACKGROUND

Geddis was hired in 1988 by the University of Delaware as its Director of Support Services. On May 14, 1996, after various complaints about aspects of Geddis' behavior had been made to University officials, he was advised he would be terminated effective May 31, 1996. In accordance with the University's grievance procedures, Geddis pursued and exhausted all of his remedies within the University, losing at every step of the process.

Prior to Geddis' termination, Charlene Benson, an African–American woman who was then an executive assistant to the Executive Vice–President of the University, was asked by Barbara Kreppel, Geddis' immediate supervisor, to monitor Geddis' conduct and performance. Thereafter, Benson was told to familiarize herself with the departments under Geddis' supervision to learn the skills necessary to direct Support Services. After Geddis was terminated, the University appointed Benson to Geddis' former position on an interim basis. Approximately five months later, she was permanently appointed Director of Support Services without an official executive search for other candidates. There is a dispute between the parties whether University policy required such a search.

On March 6, 1997, Geddis filed a charge of discrimination with the Equal Employment Opportunity Commission and the Delaware Department of Labor. Thereafter, on May 13, 1999, Geddis filed an eight-count complaint in the District Court. Subsequently, the parties agreed to the dismissal of all claims except those based on the grounds (a) that the University engaged in "reverse" race and gender discrimination in violation of Title VII when it terminated Geddis and replaced him with an African–American female and (b) that Geddis' termination constituted a breach of Delaware's implied covenant of good faith and fair dealing. The University then moved for summary judgment, which the District Court granted. Geddis appeals the District Court's grant of summary judgment.

Because we write solely for the parties, we need not set forth a detailed recitation of the background for this appeal and will limit our discussion to resolution of the issues presented.

### II.

### JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1291 and 1294(1).

This court has plenary review of a grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c). This court must "examine the evidence of record in the light most favorable to ... the party opposing summary judgment, and resolve

all reasonable inferences in her favor.... This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers, The State University,* 120 F.3d 426, 431 (3d Cir.1997) (quotation and citations omitted).

## III.

## DISCUSSION

### A. *Reverse Discrimination Claim*

In the seminal case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court articulated a framework for evaluating Title VII employment discrimination claims when, as in most Title VII cases, there is little or no direct evidence of prohibited discrimination. This framework has been recently reviewed and clarified in *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Under this framework, a plaintiff claiming employment discrimination must first establish a prima facie case of discrimination. Once a plaintiff has done this, the burden of production shifts to the employer, who must produce evidence that the employment decision adverse to the plaintiff was made for a legitimate, non-discriminatory reason. *Id.* at 142. If the employer does this, then the burden shifts back to the employee/plaintiff to "demonstrate that the proffered reason was merely a pretext for unlawful discrimination." *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 319 (3d Cir.2000) (citing *Reeves,* 530 U.S. at 143).

Typically, to establish a prima facie case of discrimination, a plaintiff must establish (i) membership in a protected class, (ii) adequate qualifications for the employment position in question, and (iii) that people who were not in the protected class were treated more favorably than those in the class. *Goosby,* 228 F.3d at 318–19. This showing is, however, ill-suited to claims involving alleged "reverse discrimination." We have held that "the substance of the burden-shifting analysis applies with equal force to claims of 'reverse discrimination,'" *Iadimarco v. Runyon,* 190 F.3d 151, 158 (3d Cir.1999), and that "all that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Id.* at 161.

The University, for the limited purpose of its motion for summary judgment in the District Court, conceded that Geddis has established his prima facie case of discrimination. *Geddis v. Univ. of Delaware,* No. Civ. 99–304, 2001 U.S. Dist. LEXIS 9058, at *18, 2001 WL 536408 (D.Del. May 16, 2001). The District Court found, and Geddis does not deny, that the University has articulated a legitimate, non-discriminatory reason for its employment decision with respect to Geddis. *Id.* at *19. The central question presently at issue between the parties with respect to Title VII is whether, viewing the record in the light most favorable to Geddis, he could prove by a preponderance of the evidence that the University's reasons for firing him were pretextual. Under *Reeves,* 530 U.S. at 146–48, and *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994), Geddis needs to show that, looking at the record before the District Court, a jury could have reasonably (a) believed that discrimination on the basis of Geddis' race or gender was more likely than not a motivating or determinative cause for his firing or (b) disbelieved the University's proffered reasons for firing him.

Geddis has pointed to nothing in the record below that could lead a reasonable jury to find that his race or gender was the cause of his termination. Rather, the only "evidence" that Geddis points to is (1) that his former position was filled by an African–American woman who he claims was less qualified than he was and (2) that the University did not follow its standard procedures in filling his former position. The fact that Geddis was replaced by an African–American woman does not, as the District Court recognized, support the claim that race or gender played a role in his termination. Geddis has not identified a job description that Benson failed to meet, and her qualifications were evidently well known to University officials.

Geddis' primary strategy in meeting the burden of his Title VII claim is to try to show that the University's reasons for firing him were pretext for race and gender discrimination by arguing that the allegations against him are false and/or that the University failed to adequately investigate these allegations. This court has held that "it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus." *Abramson v. William Paterson Coll. of N.J.,* 260 F.3d 265, 283 (3d Cir. 2001).

One of the reasons the University gives for firing Geddis is that Kreppel believed that Geddis lacked credibility and the ability to manage Support Services. She formed this belief partly based on an e-mail message from the Associate Vice-President of Human Resources and Labor Relations, which reported, among other things, that Geddis referred to her as that "fucking woman" and a "fucking bitch." App. at 87. The allegations of Geddis' inappropriate remarks and managerial deficiencies were subsequently supported by written statements from two of Geddis' subordinates. App. at 68, 145. Geddis attempts to show pretext by offering reasons to believe that the allegations of these subordinates are false.

In the procedural posture of this case before the District Court, all material factual disputes should be construed in favor of Geddis. The District Court did just that. Even if we were to assume that the allegations against Geddis were not true, Geddis would have to show that he was fired due to discriminatory animus to meet his burden of showing pretext. Nothing in the record adequately supports the claim, for example, that Kreppel's belief that Geddis was ill-suited to direct Support Services was based on his race or sex. Even if the criticisms by Geddis' subordinates had no basis in fact, as he contends, this would not establish that Kreppel fired him because of his race and gender, especially inasmuch as Geddis has not pointed to any evidence that Kreppel knew or should have known that the statements by the subordinates were false.

In addition, Geddis argues that the University failed to adequately investigate the allegations against him and that it did so in violation of University policy. Again, the lack of investigation alone does not establish that the University fired Geddis based on discriminatory reasons.

**B.** *Covenant of Good Faith and Fair Dealing*

In *E.I. Du Pont de Nemours & Co. v. Pressman,* 679 A.2d 436 (Del.1996), the Delaware Supreme Court found that the covenant of good faith and fair dealing supports a cause of action against an employer for firing an employee-at-will when an employer's agent "manufactur[es] materially false grounds to cause an employee's dismissal." *Id.* at 437. Under *Pressman,* as well as *Schuster v. Derocili,* 775 A.2d

1029 (Del.2001), an employee-at-will has a cause of action under the covenant of good faith if there are grounds for a jury to believe that an employer "contrived fictitious reasons ... to support her employment termination." *Id.* at 1040.

Geddis does not claim that Kreppel intentionally created "fictitious negative information" about him in order to get him fired. Instead, he argues that Kreppel spoke "with reckless disregard for the truth" when, without having conducted a investigation of the allegations against Geddis, she informed the Vice–President of Administration and the Executive Vice–President about these allegations.

■ The District Court held that the alleged failure of Geddis' supervisors to adequately investigate the allegations against him does not "rise to the level of falsification or manipulation" required to constitute a breach of the covenant of good faith. *Geddis,* 2001 U.S. Dist. LEXIS 9058, at *27. The Delaware courts have not construed the covenant's prohibition of falsifications of an employee's employment record as encompassing "reckless disregard for truth." None of the Delaware cases that Geddis cites are relevant because none of them are related to the duties involved in the covenant of good faith. It would not be appropriate for this court to expand Delaware's understanding of its own covenant, especially when the Delaware Supreme Court has insisted on a narrow application. *See, e.g., Pressman,* 679 A.2d at 442.

Geddis also suggests that because the University has a policy of investigating serious allegations about its employees, its failure to do so in his case violates the covenant of good faith. The covenant of good faith has been held to apply to a termination that violates a public policy, namely a policy in the public interest as recognized by some legislative, administra-

tive or judicial authority. *Pressman,* 679 A.2d at 441–442. Even if Kreppel's failure to investigate the allegations against Geddis before reporting them to her superiors did violate University policy, the fact that the University is a publicly-funded institution does not make a violation of its policies a violation of public policy because the University does not set public policy with respect to the general employment policy of the state. Therefore, the University's failure to investigate the allegations does not amount to a violation of the Delaware covenant of good faith and fair dealing.

## IV.

## CONCLUSION

For the reasons described herein, the judgment of the District Court will be affirmed.