

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-10-2004

# Dorsey v. Pittsburgh Assoc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1882

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Dorsey v. Pittsburgh Assoc" (2004). *2004 Decisions.* Paper 1012.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1012

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1882
_____

PATTY JO DORSEY, Executors of the Estate of Philip W. Dorsey III;
DANIEL H. BOOKER; REDMOND JOHNSON, JR.; PHILIP S. DORSEY,

Appellants

vs.

PITTSBURGH ASSOCIATES, t/d/b/a
PITTSBURGH PIRATES BASEBALL CLUB


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 02-cv-00353)
District Judge:  The Honorable Donetta W. Ambrose
_____

ARGUED JANUARY 27, 2004

BEFORE: NYGAARD and FUENTES, <u>Circuit</u> <u>Judges</u>,
and O'NEILL,[*] <u>District</u> <u>Judge</u>.

(Filed:  February 10, 2004)
_____

_____

[*]        Honorable Thomas N. O'Neill, Jr., Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

Walter G. Bleil, Esq. (Argued)
Samuel P. Kamin, Esq.
Goldberg Kamin & Garvin
437 Grant Street
1806 Frick Building
Pittsburgh, PA 15219
       Counsel for Appellants


Robert F. Prorok, Esq. (Argued)
James R. Haggerty, Esq.
David J. Burton, Esq.
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219
       Counsel for Appellee


_____

OPINION OF THE COURT
_____


NYGAARD, Circuit Judge.

    The appellants, Philip Dorsey, III,[1] Daniel Booker, and Redmond Johnson,

appeal the District Court's summary judgment order in favor of Pittsburgh Associates.

Appellants applied for and were denied positions as ticket sellers at PNC Park. The

District Court held that appellants did not present a *prima facie* case of race and age

discrimination because they failed to show they were qualified for the job sought. We

will affirm, but do so on an alternate ground. We conclude that appellants satisfied the

_____

1.     After this case was filed, Philip Dorsey, III died. His estate replaced him in the lawsuit. As a matter of convenience, we refer to Dorsey as the appellant.

2

threshold standard of qualification, but their claim fails at the pretext step of the familiar *McDonnell Douglas* analysis.

## I.

Because we write exclusively for the parties, we recite the facts only briefly. Pittsburgh Associates owns and operates the Pittsburgh Pirates baseball franchise.[2] Until 2001, the Pirates played their home games at Three Rivers Stadium, but in the 2000-2001 off-season they moved to a new stadium called PNC Park. Because they were the stadium operators at PNC Park, the Pirates were responsible for staffing the stadium during games.

The Pirates made several decisions that were intended to make attending a game at PNC Park a different and better experience than it had been at Three Rivers Stadium. The Pirates strived for increased customer service at PNC Park. This customer service focus was buttressed by an upgrade to a new ticketing system.

Before the 2001 season opened, the Pirates conducted hiring for ticket seller, greeter, and host positions through an application and interviewing session on January 22, 2001. At that session, the Pirates emphasized their customer service vision for PNC Park. The Pirates hired applicants for ticket seller positions based on direct knowledge of their work performance at Three Rivers Stadium, without consulting

---

2.     For the sake of convenience, we will refer to Pittsburgh Associates as "the Pirates."

interview results or requiring computer proficiency testing. Because Pirates staff had no interaction with greeters and hosts at Three Rivers Stadium, applicants for those positions were evaluated through interviews. Of 369 applicants for ticket seller, greeter, and host positions, the Pirates hired 336.

Appellants are three of only four rejected ticket seller applicants.[3] They are African American men, ages 74, 69, and 58. They had worked as ticket sellers at Three Rivers Stadium for 30, 30, and 12 years, respectively. Each appellant received an "acceptable" rating based on his interview on January 22, 2001, but was denied the job as ticket seller on the basis of Pirates' executives already-formed impressions of his computer and customer service skills.

After being denied jobs at PNC Park, appellants filed suit alleging racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, age discrimination under the Age Discrimination in Employment Act ("ADEA"), and discrimination under the Pennsylvania Human Relations Act ("PHRA"). The District Court granted summary judgment for the Pirates because appellants failed to show they were qualified for the ticket seller position and, as a result, did not make out a *prima facie* case of age or race discrimination.

## II.

---

3. The rejected Ticket seller applicant who is not participating in this lawsuit is a white male.

We have jurisdiction under 28 U.S.C. § 1291, because we are asked to review a summary judgment order by the District Court that entirely disposed of the case. We have plenary review of the District Court's decision to grant summary judgment. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 602-03 (3d Cir. 2002).

In *McDonnell Douglas Corp. v. Green*, the Court established a burden-shifting framework for claims under Title VII. 411 U.S. 792, 802 (1973). The plaintiff must first establish a *prima facie* case by meeting several conditions: (1) he is a member of a protected class, (2) he applied for and was qualified for an open position, (3) he was rejected, and (4) after rejection, the position remained open and the employer continued accepting applications. *Id.* Then, if the plaintiff is successful in making out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for his action. *Id.* at 802. "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 410 (3d Cir. 1999) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

We use the *McDonnell Douglas* analysis for each of the discrimination claims made by appellants here. *See Narin v. Lower Merion Sch. Dist.,* 206 F.3d 323, 331 (3d Cir. 2000) (using the *McDonnell Douglas* framework in an ADEA context); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995) (stating that PHRA

5

claims are analyzed under *McDonnell Douglas* "consistently with interpretations of Title VII").

A.       *Prima Facie* Case

The District Court concluded that appellants failed to make out a *prima facie* case of discrimination because they did not show they were qualified for ticket seller positions.  We conclude that appellants have presented sufficient evidence to create a *prima facie* case.

We have noted that if a plaintiff is not qualified for the job he seeks, we can reject a discrimination claim without the heavy lifting that is required if a *prima facie* case is made out.  *See, e.g., Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 n.4 (3d Cir. 1999).  However, "'[w]hile objective job qualifications should be considered in evaluating the plaintiff's *prima facie* case, the question of whether an employee possesses a subjective quality . . . is better left to' consideration of whether the employer's nondiscriminatory reason . . . is pretext." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990)). "[T]o deny the plaintiff an opportunity to move beyond the initial stage of establishing a prima facie case because he has failed to introduce evidence showing he possesses certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext." *Id.* (quoting *Weldon*, 896 F.2d at 798-99).

The Pirates argue, as they did before the District Court, that appellants were not qualified for positions as ticket sellers. This argument is intertwined with the assertion that appellants' lack of computer and customer service skills constitutes a legitimate reason for not hiring them. The District Court accepted the Pirates' argument and chose to dispose of the case at the first stage of *McDonnell Douglas*. In doing so, the District Court improperly failed to examine the hiring criteria to determine whether their use was mere pretext. *See Weldon*, 896 F.2d at 798-99. We will not follow suit and collapse the entire *McDonnell Douglas* analysis into this first step. *Id.* at 799.

B.          Burden-Shifting Under *McDonnell Douglas*

We conclude that the District Court erred by not proceeding to the pretext analysis under *McDonnell Douglas*. This error, however, was not prejudicial to appellants. Had the Court proceeded to the pretext analysis, it would have reached the same result.

Appellants having made out a *prima facie* case, a presumption arises that the Pirates discriminated in their hiring decision. *McDonnell Douglas,* 411 U.S. at 802. The Pirates can successfully dispel that presumption by presenting a nondiscriminatory reason for their decision not to hire appellants. *Id.* At this second step of the *McDonnell Douglas* analysis, "the defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions, which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment

7

action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citations and quotations omitted) (emphasis in original).

To accompany its summary judgment motion, the Pirates presented deposition testimony from several Pirates executives who had personal interactions with appellants at Three Rivers Stadium. Mike Krachkowski and Dave Wysocki, Assistant Directors of Ticket Operations for the Pirates, were familiar with each appellant through their responsibility for managing all game-day operations relating to ticket sales and supervising ticket sellers on a day-to-day basis. John Barna, Ticket Office Assistant for the Pirates, was familiar with appellants because he monitored their daily sales report records. According to Krachkowski, Wysocki, and Barna, appellants lacked the computer and customer service skills required of ticket sellers at PNC Park. Specifically, these individuals testified that appellants each struggled with the Ticket Master computer system at Three Rivers Stadium, which was substantially easier to operate than the Tickets.com system being installed at PNC Park.

The deposition testimony indicated that Dorsey relied solely on the function keys to sell tickets, and as a result was unable to accommodate purchasers' specific requests for seats. Booker could not fix simple computer problems or handle basic customer requests. Johnson, like Dorsey, relied solely on the function keys to sell tickets. Each appellant was also subpar in terms of customer service. The Pirates received multiple complaints about Dorsey being rude to customers and exhibiting poor skills at

8

his job. Booker frequently exchanged tickets for games already played (clearly violating company policy) and needed to be reminded of ongoing promotions and sales. A line frequently formed at Johnson's booth because he was slower than other ticket sellers. Additionally, all three appellants had trouble balancing their cash drawers or their daily sales reports at the end of shifts.

It is entirely reasonable that the Pirates chose not to hire appellants because their work performance at Three Rivers Stadium did not meet the new, higher standards being imposed at PNC Park. Thus, because the Pirates have presented a legitimate, nondiscriminatory reason for its hiring decisions, the *McDonnell Douglas* burden shifts back to appellants.

Once a defendant has presented a legitimate, nondiscriminatory reason for its hiring decision, a plaintiff seeking to avoid summary judgment must present pretext evidence that: (1) casts doubt upon each of the reasons offered by defendant for the employment action so that a fact-finder could reasonably conclude that each was a fabrication; or (2) allows the fact-finder to infer that discrimination was more likely than not the cause for the employment action. *Fuentes v. Perskie*, 32 F.3d 759, 761 (3d Cir. 1994). Appellants have not made either showing. Appellants show few, if any, "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

9

[Pirates'] proffered legitimate reasons" for not hiring them.[4] *Id.* at 765. Hence, because there is a lack of a genuine issue of fact on whether the Pirates' proffered reason was pretextual, summary judgment for the Pirates was appropriate.

C.        Statistics

The statistics appellants attempted to present before the District Court do nothing to save their claim, as the statistics do not make out a case of pretext. While "statistics as to . . . employment policy and practice may be helpful to a determination of whether . . . [a] refusal to rehire . . . conformed to a general pattern of discrimination," here they are unavailing. *McDonnell Douglas*, 411 U.S. at 805. The statistics appellants propose to present are "based on an applicant pool containing individuals lacking minimal qualifications for the job" and are thus of little probative value. *Watson v. Ft. Worth Bank & Trust,* 487 U.S. 977, 997 (1988); *see also Berger v. Iron Workers Reinforced Rodmen*, 843 F.2d 1395, 1420 (D.C. Cir. 1988) ("It is well established that if a statistical model does not take into account the legitimate, objective qualifications for the jobs being analyzed, then it fails sufficiently to focus on an appropriate labor pool, and is therefore deficient in establishing a prima facie case.").

**III.**

---

4.        Specifically, appellants argue that other Three Rivers Stadium employees lacking the requisite computer skills were offered alternate jobs at PNC Park's will call window. The record shows, however, that those employees were automatically given the positions on the basis of seniority.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to the Pirates. We do so because appellants have failed to show that the Pirates' proffered reason for not hiring them was pretextual.