

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-4-2009

# Parker v. Verizon PA Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4829

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Parker v. Verizon PA Inc" (2009). *2009 Decisions*. Paper 1924.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1924

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4829

RAY A. PARKER; CAULETTE PARKER

v.

VERIZON PENNSYLVANIA, INC.;
KIMBERLY K. ONESKO;
GEORGE ONESKO

Ray A. Parker,
Appellant

Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 07-00435)
District Judge: The Honorable Arthur J. Schwab

Submitted Under Third Circuit LAR 34.1(a)
December 2, 2008

Before: AMBRO and GREENBERG, Circuit Judges
O'NEILL[*], District Judge

---

[*]The Honorable Thomas N. O'Neill, Jr., Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

## OPINION

O'NEILL, <u>District Judge</u>

Appellant Ray A. Parker appeals from an order granting summary judgment in favor of appellee Verizon Pennsylvania Incorporated on his employment discrimination and retaliation claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq., and his interference and retaliation claims under the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, et seq.[1] For the following reasons, we will affirm.

**I.**

Because we write only for the parties, our factual summary is brief. These facts are viewed in the light most favorable to Parker, who was hired in November 2003 to work in Verizon's Robinson Township Call Center as a Customer Sales and Service Consultant. His primary job duty was to answer telephone calls from Verizon customers with service or billing issues and enter the relevant information into a computer.

In August 2004, Parker's treating physician, Dr. Kamlesh B. Gosai, diagnosed him with sarcoidosis, an autoimmune disease causing inflamation of the lungs, and pulmonary fibrosis, the formation of scar tissue in the lungs creating an inability to exchanges gases

---

[1] The District Court dismissed without prejudice Parker's state law claim of trespass but the dismissal of this claim is not an issue on appeal.

resulting in hypoxemia. This condition affected Parker's ability to breathe and talk.

This same month, he began his first of three short-term disability leaves. He returned in December 2004 to the same job. He began his second short-term disability leave shortly thereafter and returned to work in February 2005.

Prior to Parker's return in February 2005, Dr. Gosai sent a letter to Verizon[2] recommending that: (1) Parker be permitted to work a shorter work week and work day; (2) Parker be assigned work that does not involve talking on the telephone; (3) Parker's commute be shortened; and (4) Parker initially work three days per week with one day off in between each day. Onesko, an absence administrator, spoke to Parker about the requested accommodations. Parker was given a reduced schedule of fewer hours each day instead of working three days with a day off in between. Parker was placed in an "off-line" position where he was required to input customer information into a database but no external or internal customer contact was required. Verizon did not transfer Parker to Verizon's Greensburg or Uniontown facilities to accommodate a shorter commute because it deemed the request unrelated to Parker's ability to perform his job.

Parker requested a transfer to a less physically demanding job in the spring of 2005. In May 2005, Parker learned of a position in the Greensburg office for employees with medical restrictions that allowed customer contact but no sales. Parker contacted Dr.

---

[2] As explained by appellants, Verizon contracts with MetLife to administer all employee disability and restriction claims. Verizon defers to MetLife's decisions with regard to any restrictions which are placed on the employee's ability to perform his or her job. Verizon employees with medical problems are referred to MetLife, and MetLife gathers information on the employee's medical problem and conveys the employee's restrictions to Verizon.

3

Gosai, who changed Parker's restrictions to allow customer contact with no sales. Parker testified that this change was due to a slight stabilization of his condition.

In November 2005, Parker was denied a scheduled pay raise. He filed a grievance and received the pay raise.

In December 2005, Parker began his third leave of absence and returned to work in February 2006 with restrictions; he was not to talk on the telephone or to have customer contact. Upon his return, Parker claims that Broggi yelled at him in front of co-workers after learning of his restrictions and tried to force him to resign. Parker alleges that Broggi yelled that "this is a call center and if you can't take calls then we have nothing for you to do." He claims that Broggi repeatedly asked him if he was telling her that he was resigning. When Parker told her that he did not intend to resign, Parker alleges that Broggi said "if you're not taking calls there's no work for you to do here so you must be telling me that you're resigning." Parker was again restricted from having customer contact or sales.

The next day Parker was assigned to the "off-line" group of restricted employees that had been transferred to Verizon's Washington, Pennsylvania facility, which was closer to his home. A February 2006 email from non-decisionmaker Onesko to decisionmaker Broggi and Nelson stated: "I see - attached below - that [Parker] has his restrictions back. I really hate to send him to the Washington office, because he lives in Bentleyville." Onesko admitted that she made this comment because she was frustrated

4

with Parker.

In July or August 2006, Parker purchased and was constructing a ranch-style modular home because of his difficulty in climbing stairs. During the construction, Parker lived with his aunt whose home was three blocks from the site of his new home.

On September 14, 2006, Parker called in sick at 7:45 a.m. He testified that he had taken his medicine the night before and had nausea and diarrhea through the night. Parker went to the construction site of his new home. His wife, Caulette Parker, had taken a half-day off from work and construction workers and Caulette Parker's father were scheduled to be working on the house that day.

Andrew Roberts saw Parker at the construction site and called his wife, Verizon manager Debra Roberts, to inform her that he saw Parker unloading materials from a van. Parker denied helping to move materials or doing work on the house. Debra Roberts communicated her husband's observations to Onesko and Susan Nelson, another absence administrator. Onesko and Nelson decided that Onesko would conduct a home visit, and Onesko asked her husband George Onesko to accompany her. Onesko observed Parker at the construction site, and after conferring with Verizon Labor Relations Manager Cindy Marinari decided to approach him. Onesko claims that she heard an electric saw being used in the basement and that Parker came up from the basement perspiring and wiping his hands on a rag. Onesko prepared a typed memorandum of the events that noted that "[a]t this point the saw stopped running." In their conversation, Parker told Onesko that

he was feeling better but not well enough to go into work.

On September 15, 2006, Parker was suspended from employment pending further investigation of potential falsification of his medical condition. On September 26, 2006, management employees Susan Nelson, Cindy Marinari, Rori Broggi and Michael Billups decided to discharge Parker based on his misrepresentation of his health condition in violation of Verizon's Code of Business Conduct. Verizon's Code of Business Conduct, Section 3.3.1 Company Benefits, states:

> Verizon's benefits plans and programs are provided as compensation and must be used honestly. You must not misrepresent your health status, your covered members, your beneficiaries, or any other facts, including reasons for absence, in order to claim benefits to which you, or someone else, are entitled.

Parker disagrees that he misrepresented his health condition. He also testified in his deposition that he could not "think of any" instance where Verizon personnel refused to discuss any reasonable accommodations with him.

Parker filed a complaint with the United States District Court for the Western District of Pennsylvania. On November 30, 2007, the District Court granted summary judgment in favor of Verizon on all claims. The District Court held that Parker failed to establish a prima facie case of disability discrimination under the ADA. The Court held that Parker arguably established that he was disabled and a qualified individual but that he "presented no evidence to create a material issue of fact that he suffered an adverse employment action as a result of discrimination" by Verizon's termination of his

6

employment, its failure to accommodate his disability or its failure to engage in the ADA interactive process in good faith. Despite finding that Parker failed to make a prima facie showing, the District Court alternatively found that Parker failed to present sufficient evidence that Verizon's reason for discharging him was pretextual. The Court also held that Parker failed to establish a prima facie case of retaliation because he failed to present sufficient evidence of a causal link between his protected activity and his termination. The Court held that Parker's FMLA interference claim failed because he presented no evidence that Verizon interfered with his FMLA rights and Verizon was more than reasonable in its accommodation of his conditions. Finally, the Court dismissed the state-law trespass claim without prejudice.

Parker thereafter timely appealed.

## II.

The District Court had jurisdiction over this diversity action under 28 U.S.C. § 1331. We have jurisdiction over the final order of the District Court pursuant to 28 U.S.C. § 1291.

We exercise plenary review over the District Court's decision to grant summary judgment. NBT Bank Nat'l Assoc. v. First Nat'l Comm. Bank, 393 F.3d 404, 409 (3d Cir. 2004). "Affirming the grant of summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Id. (citation omitted). We resolve all factual doubts and draw all reasonable

7

inferences in favor of the nonmoving party.  See DL Res. Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216 (3d Cir. 2007).

**III.**

Parker alleges that Verizon discriminated against him under the ADA by discharging him and by failing to engage in the interactive process[3] and under the FMLA by interfering with his rights when it terminated him rather than restoring him to his position after he took FMLA leave.  Parker also alleges that Verizon discharged him in retaliation for engaging in protected activity under the ADA and FMLA.

A.    Parker's Discrimination and Retaliation Claims Involving his Termination

We apply the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to discrimination and retaliation claims under the ADA and the FMLA.  Under this scheme:  (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for

---

[3]  Parker has not appealed the District Court's grant of summary judgment in favor of Verizon for his ADA discrimination failure to accommodate claim.  His brief does not argue this claim.  Instead, the ADA discrimination section of his brief argues only that Verizon failed to engage in the interactive process in good faith and that his termination was pretextual. Therefore, this issue has been waived on appeal and we need not consider it.  See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993), holding that a failure under Federal Rule of Appellate Procedure 28(a)(3) and (5) and Third Circuit Local Appellate Rule 28.1(a) to set forth the issues raised on appeal and to present an argument in support of those issues in an opening brief results in waiver of the issues on appeal.

discrimination.  <u>McDonnell Douglas</u>, 411 U.S. at 802.

Assuming that Parker established a prima facie case for his ADA and FMLA discrimination and retaliation claims involving his employment termination,[4] Verizon met its burden of demonstrating a legitimate, nondiscriminatory justification for Parker's discharge with evidence that Parker was terminated for misrepresenting his health status in violation of Verizon's Code of Business Conduct.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).  Parker argues that this justification is pretext for discrimination.[5]  <u>McDonnell Douglas</u>, 411 U.S. at 804.

---

[4]  Although the District Court found that Parker did not establish a prima facie case for these claims, for Parker's ADA discrimination claim it alternatively considered whether Parker established that Verizon's reason for Parker's termination was pretextual.  Parker alleges that the evidence of pretext he produced for his ADA discrimination claim also applies to his other claims.  Because the District Court would have been justified in granting summary judgment on each claim involving his termination on the ground that Parker failed to establish proof of pretext, we will address these claims together at the pretext stage.  <u>See</u> <u>Dorsey v. Pittsburgh Assoc.</u>, 90 Fed. Appx. 636, 637 (3d Cir. 2004), affirming the District Court's opinion but on alternative pretext grounds, not the failure to establish a prima facie case grounds the District Court found.  Parker's FMLA interference claim and ADA failure to engage in the interactive process claim will be addressed separately, as these claims do not concern Parker's termination.

[5]  Parker argues that Verizon waived its right to move for summary judgment on his ADA retaliation claim because it was raised for the first time in Verizon's reply brief to the District Court.  Parker concedes that the same evidence of pretext applies to his ADA retaliation claim as his FMLA retaliation claim and therefore he has not been prejudiced even if Verizon's motion did not clearly argue the ADA retaliation claim when it moved for summary judgment on all of his claims.  Moreover, Parker filed a sur-reply brief which addressed this issue.  <u>See</u> <u>Salazar v. City of Phila.</u>, 2007 WL 1847402, at *1 n.5 (E.D. Pa. June 25, 2007), holding that even having the opportunity to file a sur-reply is sufficient to allow consideration of a claim first briefed in a reply.

Additionally, Parker's claim that the District Court did not properly address this claim in its opinion fails.  In discussing retaliation, the District Court mentioned that Verizon "had been accommodating Parker's alleged disabilities for approximately two years prior to his

9

To show pretext, Parker must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764-65; see also Torre v. Casio, Inc., 42 F.3d 825, 830 (3d Cir. 1994). To discredit the proffered reason, Parker cannot simply show that the employer's decision was wrong or mistaken but must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer that the employer was not actually motivated by its proffered nondiscriminatory reason. Fuentes, 32 F.3d at 765, citing Ezold v. Wolf, Block, Shorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992). To show that discrimination was more likely than not a motivating or determinative cause of Verizon's action, Parker "must point to evidence with sufficient probative force" for a factfinder to make this conclusion; i.e. that Verizon has previously discriminated against him, that Verizon has discriminated against other persons within Parker's protected class or within another protected class or that Verizon has treated more favorably similarly situated persons not within the protected class. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir. 1998).

termination." Although the retaliation section's analysis was brief and the ADA retaliation claim appears to be integrated with the FMLA retaliation claim, Parker offered identical evidence for both claims and the overall opinion from the District Court therefore establishes that Parker's ADA retaliation claim fails.

10

Parker agues that the following evidence supports his contention that Verizon's justification is pretext for all of his claims: (1) his denial that he misrepresented his health on September 14, 2006 or did any work on his home that day; (2) the inconsistency between Onesko's accounts of events in her memorandum after the incident and in her deposition testimony regarding when the saw stopped running; (3) the decisionmakers not having specific information regarding Parker's illness to know whether he misrepresented his health and not consulting any health care providers on the issue; (4) the policy that he was expected to stay home while on FMLA leave never being communicated to him; (5) the admission by Onesko in her deposition that she stated that she "hated" to transfer Parker to the Washington office because she was frustrated with Parker's restrictions; (6) the alleged incident where Broggi yelled at him and tried to force him to resign because of his restrictions in February 2006; and (7) the scheduled pay raise denied to him after he disclosed his condition which he had to file a grievance to get.

First, Parker attempts to discredit Verizon's reason for discharging him by denying that he misrepresented his health condition on September 14, 2006 and that he did any work at the construction site of his home. However, the question is not whether Verizon's decision was wrong or mistaken but whether Verizon acted with discriminatory animus. Geddis v. Univ. of Del., 40 Fed. Appx. 650, 652 (3d Cir. 2002). Parker's continued denial that he misrepresented his health is insufficient to discredit Verizon's reason for firing him; he must instead demonstrate weaknesses, implausibilities,

11

inconsistencies, incoherencies or contradictions in this reason to permit a reasonable jury to find Verizon's justification unworthy of credence. Fuentes, 32 F.3d at 765. He has not presented such evidence. His denial that he preformed any work while at the construction site does not contradict Verizon's decision that he misrepresented his health by claiming he could not be at work but could be at the construction site of his home. Parker does not deny being at the construction site on September 14, 2006. Thus, his denial that he misrepresented his health condition and that he worked at the construction site is not sufficient evidence to discredit Verizon's reason for his termination. Any material issue that the evidence of his denial creates goes solely to whether the decision was wrong, not discriminatory.

Second, Parker argues that Verizon proffered "inconsistent" justifications for his discharge because Onesko's account of when the saw stopped running in her memorandum differed from her deposition testimony. Parker alleges that in the typed memorandum after the incident Onesko stated the saw stopped running after Parker came up from the basement and that in her deposition Onesko stated the saw stopped running before Parker came up from the basement. While it is true that inconsistency in the employer's reason is indicative of pretext, see, e.g., Fuentes, 32 F.3d at 764, Verizon's justification has not been inconsistent. When Verizon fired Parker, it provided the justification that it was because he misrepresented his health condition in violation of Verizon's Business Code of Conduct. Parker took FMLA leave because he was too ill to

12

work but spent the day at a construction site with his wife, father-in-law and contractors. Verizon has never provided a different reason; the reason has remained consistent.

Parker argues that, even if Verizon's reason was not inconsistent because of Onesko's alleged inconsistent statements, Kowalski v. L & F Prod., 82 F.3d 1283 (3d Cir. 1996), supports his contention that Onesko's alleged inconsistent statements made Verizon's reliance on Onesko's observations to justify Parker's termination pretextual. In Kowalski, this Court held that the "facial accuracy and reliability of the [investigative] report is probative of whether [the employer] acted in good faith reliance [on its] conclusions: the less reliable the report may appear, the greater the likelihood that [the employer's] reliance on it to justify" the adverse action was pretextual. See Kowalski, 82 F.3d at 1290. This Court found that there were "very serious questions regarding the reliability of the investigator's report" that raised a genuine issue of material fact regarding whether the reason for Kowalski's termination was pretextual. Id. Here, the alleged inconsistency between Onesko's accounts of when the saw stopped did not exist at the time Verizon made its determination to discharge Parker; the allegedly inconsistent statement arose from Onesko's deposition which was after Verizon made the decision to terminate Parker. Because Parker fails to show any inconsistencies in the alleged facts on which Verizon relied to make its determination that casts doubt on Verizon's reasoning, this argument fails to support his contention that Verizon's reasoning was pretextual.

Third, Parker argues that Verizon's reason should be discredited because none of

13

the decisionmakers had specific information regarding Parker's illness sufficient to determine whether he misrepresented his health and they did not consult any health care providers on the issue. Parker does not allege that the decisionmakers had no knowledge of his health condition. Detailed information was not required for Verizon to determine that Parker misrepresented his health condition by claiming that he was too sick for work and then spending the day at the construction site of his home. Even if Parker showed how more specific information would have demonstrated that Verizon's decision was wrong, no evidence exists that the decision was discriminatory. See Fuentes, 32 F.3d at 765. Thus, this evidence is insufficient to allow a reasonable jury to find Verizon's reasoning unworthy of credence.

Fourth, Parker claims that Verizon's reason is pretextual because an alleged unwritten policy that he was expected to stay home during FMLA leave was never communicated to him. However, Parker was discharged for violating Verizon's Business Code of Conduct by misrepresenting his health condition, not for leaving his home while on FMLA leave. Thus, any failure to inform him of such a policy cannot establish pretext because it is immaterial in determining whether the policy he was fired for violating was pretext for discrimination. Thus, this argument fails to support a claim that Verizon's reason was pretextual.

Parker's fifth, sixth and seventh claims shift his focus from discrediting Verizon's justifications to suggesting "invidious discriminatory reason[s that] more likely than not"

14

motivated Verizon's decision. Fuentes, 32 F.3d at 764. His fifth claim argues that Onesko's admission in her deposition that she stated in a February 2006 email that she "hated" to transfer Parker to the Washington office, which was closer to his home because she was frustrated with Parker's restrictions, is sufficient evidence of pretext. Parker's sixth claim argues that his alleged exchange with Broggi in February 2006, in which she yelled at him and tried to force him to resign because of his restrictions, also is sufficient evidence of pretext.

In considering whether stray remarks, such as the comments made by Onesko and Broggi, are probative of discrimination, this Court has considered the following factors: "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir. 1997); see also Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1112 (3d Cir. 1997). "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Fuentes, 32 F.3d at 767, quoting Ezold, 983 F.2d at 545.

Assuming that the remarks by Onesko and Broggi were made as Parker alleges, the remarks occurred seven months before his termination and did not directly relate to the decision. Additionally, three other Verizon managerial employees were involved in the

15

decisionmaking process with Broggi and there is no evidence that these three managerial employees demonstrated discriminatory animis. In the months after the remarks and before Parker's termination, the record shows that Verizon continued to accommodate Parker's disability and his need for intermittent FMLA leave. For example, Verizon allowed Parker to take intermittent leave, transferred him to the Washington office, permitted reduced work hours and provided an off-line position for him while maintaining his rate of pay and benefits. Even viewing the facts in the light most favorable to Parker, we decline to depart from the principle that such stray remarks are rarely given great weight when made temporally remote from the decision to terminate Parker. See Keller, 130 F.3d at 1112, holding that where plaintiff's manager commented during a meeting five months prior to the termination that plaintiff should hire additional assistant managers if he was getting too old to travel, manager's comment could not "reasonably be viewed as sufficient to prove by a preponderance of the evidence that age was a determinative cause of Keller's subsequent termination"; Ezold, 983 F.2d at 545. The record as a whole does not support that two stray comments made months before Parker's discharge, and followed by continued accommodations, support that Verizon's decision to discharge Parker was actually motivated by discriminatory intent and not the reason proffered.

Parker further argues that these stray comments support his contention that those with discriminatory animus influenced or participated in the decision with the other

managerial employees.  It is true that, "[u]nder our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate." Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 286 (3d. Cir. 2001), citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995).  However, unlike the cases on which he relies, Parker failed to develop evidence that the people who influenced or participated in the decision to terminate him exhibited discriminatory animus.  As discussed above, a stray comment from Onesko and one from Broggi do not sufficiently establish discriminatory animus as to find that Broggi's involvement, or any influence that Onesko may have had, tainted the decision to terminate Parker's employment for misrepresenting his health condition.

Finally, Parker argues that his denial of a scheduled pay raise after he disclosed his condition is sufficient evidence of pretext.  The denial occurred in November 2005 and he subsequently received the pay raise after filing a grievance.  Parker has not provided evidence to show that this denial was connected to his disability, let alone evidence to establish that the denial shows a discriminatory animus that caused him to be terminated a year later.  Verizon was aware of restrictions that Parker requested in February 2005 and was continuing to accommodate him in November 2005.  Moreover, the accommodations made by Verizon and the FMLA leave approved in the period between this denial and his termination suggest the contrary.  Therefore, this evidence, even when considered with Parker's other evidence, lacks the probative force to show that Verizon's justification is

17

pretextual.

Parker presented insufficient evidence for a reasonable factfinder to conclude that Verizon's legitimate, nondiscriminatory justification for his dismissal was pretextual. Without evidence indicating that Verizon's decision was based on a discriminatory motive, its decision will not be judged even if the decision is wrong. See Ezold, 983 F.2d at 527. In any event, Parker has not provided sufficient evidence for a reasonable factfinder to discredit Verizon's justification for Parker's termination or to find that a discriminatory animus was more likely than not a motivating factor in Verizon's decision. We will affirm the District Court's dismissal of these claims on the alternative ground of failing to provide sufficient evidence that Verizon's legitimate, nondiscriminatory justification for his discharge was pretextual.

B.    Parker's ADA Failure to Engage in the Interactive Process Claim

Parker alleges that the District Court erred in finding that he did not establish a prima facie case that Verizon failed to engage in the ADA interactive process in good faith. The District Court held that Parker did not present evidence to establish that Verizon failed to engage in the interactive process and that in fact evidence of the accommodations afforded to Parker supported the contrary.

The ADA prohibits "covered employers from discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to . . . hiring, advancement, or discharge[.]" 42 U.S.C.A. § 12112. As we noted in Jones v.

18

United Parcel Service, 214 F.3d 402 (3d Cir. 2000), the EEOC's interpretive guidelines state that once the qualified employee "has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation . . . through a flexible, interactive process that involves both the employer and the [employee]." Jones, 214 F.3d at 407, citing 29 C.F.R. Pt. 1630, App. § 1630.9, at 361. As previously noted, discrimination claims under the ADA are evaluated under the McDonnell Douglas burden-shifting framework. 411 U.S. at 802.

To establish a prima facie case "that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir. 1999). "Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." Id. at 317.

Parker argues that the following evidence supports that Verizon failed to engage in

19

the interactive process: (1) Verizon supervisors' refusal to permit Parker to transfer to a permanent position unless his restrictions were lifted; (2) Broggi's alleged comment that Parker had to resign after returning from leave with restrictions; (3) Verizon's denial of his request to park his car in a space located closer to the office; and (4) Parker and/or his physician's exclusion from a conversation that Onesko, Broggi and Nelson had regarding the possibility of "downgrading Parker or having him undergo a functional capacity evaluation."

When Parker requested accommodations to conform with the restrictions noted by Dr. Gosai, Verizon accommodated him. Although Verizon did not conform with the exact restrictions, it worked with Parker to provide accommodations and he challenged only Verizon's failure to limit his commute. However, Verizon's failure to accommodate Parker by limiting his commute was not required. See Kvorjak v. Maine, 259 F.3d 48, 53 (1st Cir. 2001), holding that "the [employer's] decision to reject an accommodation based on [the employee's] commute does not demonstrate a disregard for its obligations under the ADA"; LaResca v. AT&T, 161 F. Supp.2d 323, 333 (D. N.J. 2001), holding that "commuting to and from work is not part of the work environment that an employer is required to reasonably accommodate."

Parker claims that Verizon's failure to accommodate him with a transfer to a permanent position shows their bad faith in the interactive process. Verizon reassigned Parker to an off-line position in consideration of his request for accommodation and the

20

position did not change his benefits or pay. Verizon even stated it would work with Parker to find a permanent position despite not being required under the ADA to provide him with a permanent position when it found a temporary position to accommodate him while his restrictions existed. See Turner v. Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006), holding that "[t]he ADA does not require an employer to create a new position in order to accommodate an employee with a disability, or transform a temporary light duty position into a permanent position." By maintaining his salary and benefits while providing him a position that addressed his restrictions, Verizon sufficiently accommodated his needs and engaged in the interactive process with him to do so. Thus, Verizon's failure to transfer Parker to a permanent position fails to provide evidence for a reasonable jury to find that Verizon failed to interact in good faith.

Parker also argues that Broggi yelling at him, and stating that he had to resign because there were no available positions for him with his restrictions, demonstrate Verizon's failure to engage in the interactive process. However, this single comment was made immediately before Verizon transferred him to a position in the off-line group at the facility closer to his home and therefore does not provide evidence for a reasonable jury to conclude that Verizon failed to engage in the interactive process in good faith.

Further, Parker argues that refusing him a parking space closer to the office demonstrates Verizon's failure to engage in the interactive process. Parker admitted that he never made a request to park closer to the building to his managers. It appears he

21

made the request to a temporary supervisor who did not refuse to discuss the request and explained that the parking spaces were not for consultants. He had requested and received accommodations before and therefore knew what needed to be done to make such a request. Parker admitted in his deposition that he could not identify any request for an accommodation that Verizon failed to address. His brief states that, when Verizon placed him on the Medically Restricted Plan in March 2005, Verizon interacted with him and asked if he could suggest any reasonable accommodations. Thus, the evidence shows that Verizon was willing to and did interact with Parker to determine appropriate accommodations when he made such requests.

Finally, Parker argues that Verizon failed to engage in the interactive process by not including him in a conversation about possible accommodations and evaluations. However, nothing requires employers to include the employee and/or the employee's physician in every discussion of possible accommodations or evaluations as part of engaging in the interactive process. Parker does not allege that Verizon excluded him from other conversations. Because he alleges his exclusion from only this conversation and fails to identify any request for an accommodation that Verizon did not address, this argument fails.

After reviewing all the evidence in the light most favorable to Parker, we find that no reasonable jury could find that Parker requested an accommodation to which Verizon failed to make a good faith effort to engage in the interactive process. We will affirm the

District Court's dismissal of this claim.

C.      Parker's FMLA Interference Claim

Parker alleges that Verizon interfered with his FMLA rights by failing to restore him to his position after he took FMLA leave on September 14, 2006. The District Court found that "Verizon [did not] in any way interfere[] with plaintiff's exercise of his benefits under the FMLA. To the contrary, [it found] that Verizon was more than reasonable in its accommodation of plaintiff's condition."

The FMLA grants eligible employees the right to take up to twelve workweeks of leave in any twelve-month period if a "serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA also provides that it shall be unlawful for an employer to interfere with, restrain or deny an employee's exercise of or attempt to exercise that right. 29 U.S.C. § 2615(a)(1). Following a qualified absence, the employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions. 29 U.S.C. § 2614(a)(1).

To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005), citing 29 U.S.C. §§ 2612(a), 2614(a).[6]

_____

[6] "Under this theory, the employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Callison, 430 F.3d at 119-120. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. at 120. "Because the FMLA is not about

23

However, as we noted in <u>Holpp v. Integrated Communications Corp.</u>, 214 Fed. Appx. 176 (3d Cir. 2007), the right to reinstatement

> does not entitle a restored employee to a right, benefit or position to which the employee would not "have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). Thus, for example, if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement. 29 C.F.R. § 825.216(a)(1).

<u>Id.</u> at 178-179, <u>citing</u> <u>Conoshenti v. Public Service Elec. & Gas Co.</u>, 364 F.3d 135 (3d Cir. 2004). To make out a claim for interference, a plaintiff must show that he is an "eligible employee," 29 U.S.C. § 2611(2), who took leave "for the intended purpose of the leave," 29 U.S.C. § 2614(a)(1), and whom the employer then denied a benefit as a result of that leave, 29 U.S.C. §§ 2614(a)(3), 2615(a)(1). Thus, an employer can defeat an interference claim by showing, among other things, that the employee did not take leave "for the intended purpose." <u>See</u> <u>Crouch v. Whirlpool Corp.</u>, 447 F.3d 984, 986 (7th Cir. 2006). Nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave. <u>Callison</u>, 430 F.3d at 121. The FMLA does not shield an employee from termination simply because the alleged misconduct concerns use of FMLA leave. <u>See, e.g.</u>, <u>Hoffmann v. Professional Med. Team</u>, 394 F.3d 414 (6th Cir. 2005), holding that there was no FMLA violation where employee was discharged for unprofessional conduct related to employer's denial of FMLA leave. Just as suspected fraud or violation of company policy would be a sufficient basis to discharge

discrimination, a <u>McDonnell-Douglas</u> burden-shifting analysis is not required." <u>Sommer v. The Vanguard Group</u>, 461 F.3d 397, 399 (3d Cir. 2006).

24

an employee not on FMLA leave, it is a sufficient basis to discharge one who misuses FMLA leave. Id.; see also Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 681 (7th Cir. 1997); LeBoeuf v. New York Univ. Med. Ctr., 2000 WL 1863762, at *3 (S.D. N.Y. Dec. 20, 2000), holding that "[w]here an employee is terminated because the employer honestly believed that the employee was not using the leave period for its intended purpose, an FMLA claim will not lie"; Connel v. Hallmark Cards, Inc., 2002 WL 1461969, at *2 (D. Kan. June 19, 2002), holding that employer who discharges employee based on reasonable and honest belief that employee has been dishonest would not be in violation of the FMLA even if its conclusion is mistaken.

Parker has not shown that he is entitled to FMLA benefits because he has not met his burden of showing that there is a genuine issue of material fact over the reason he was not reinstated. He alleges that Verizon interfered with his FMLA rights by terminating him instead of restoring him to his position after he took FMLA leave on September 14, 2006. Verizon has demonstrated that Parker was not terminated for his use, but rather his misuse, of medical leave in violation of its Code of Business Conduct, which could have been the case for any employee who dishonestly used Verizon's benefits. See Edwards v. Harleysville Nat. Bank, 2008 WL 4589729, at *5 (E.D. Pa. Oct. 14, 2008). Regardless of Parker's denial that he actually misrepresented his health condition, Verizon's honest suspicion that Parker misused his leave prevents it from being found liable for violating the FMLA; Parker was not entitled to the right of reinstatement if Verizon honestly

25

believed that he was not using FMLA leave for the intended purpose. Parker should not automatically be granted a greater degree of protection from termination simply because he happened to be using FMLA leave instead of sick leave. Id. The evidence shows that Parker's employment would have been terminated because of his violation of company policy regardless of the involvement of FMLA leave. See Holmes v. Pizza Hut of America, Inc., 1998 WL 564433, at *7 (E.D. Pa. Aug. 31, 1998). Parker states that the same arguments that he brought in his pretext claim apply to refute the reason that Verizon provides for why he was not entitled to reinstatement. For the reasons stated above, we also conclude here that none of Parker's arguments create a genuine issue of material fact that Verizon interfered with his right to reinstatement under the FMLA. Thus, we will affirm the District Court's dismissal of this claim.

For the foregoing reasons, after viewing the evidence in the light most favorable to Parker, we will affirm the order of the District Court dismissing all of Parker's claims against Verizon.