

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2000

# Jones v. UPS

Precedential or Non-Precedential:

Docket 99-3108

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation
"Jones v. UPS" (2000). *2000 Decisions.* Paper 118.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/118

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 2, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3108

NEIL E. JONES

* Robert E. Jones,
      Appellant
(*Pursuant to F.R.A.P. Rule 43)

v.

UNITED PARCEL SERVICE

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 96-cv-00268J)
District Judge: Hon. D. Brooks Smith

Argued May 23, 2000

Before: SLOVITER and MANSMANN, Circuit Judges ,
and WARD,* District Judge

(Filed June 2, 2000)

Seton Hall University School of Law
Newark, NJ 07102
Jon Romberg, Esq.
 Of Counsel
Sarah O'Connor (Argued)
 On the Brief
 Attorneys for Appellant

_____

* Hon. Robert J. Ward, United States District Judge for the Southern
District of New York, sitting by designation.

David J. McAllister, Esq. (Argued)
Colleen A. Zak, Esq.
Christopher J. Soller, Esq.
Reed, Smith, Shaw & McClay
Pittsburgh, PA 15219-1886
 Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

BACKGROUND[1]

The plaintiff, Neil E. Jones, was employed as a package car driver, a union position at the Altoona distribution plant of United Parcel Service ("UPS"). Jones's position as a package car driver required that he perform "at a constant pace during a full work shift" and that Jones have the ability "to assist in moving up to 150 lbs – bend, stoop, crouch, climb, stand, sit, walk and turn/pivot for up to 9.5 hours per day, 5 days per week." See Jones v. UPS, No. 96-268J, slip op. at 1-2 (W.D. Pa. Jan. 25, 1999) (herein "slip op.").

On December 16, 1988, Jones sustained an injury to his back when he slipped and fell on some ice while making a delivery. Jones began receiving workers' compensation pursuant to the Pennsylvania Workers' Compensation Act at the rate of $377 per week. After his accident, Jones exited the work-force and enrolled at Pennsylvania State University. After two years during which Jones continued to receive benefits, a consulting orthopedist released Jones to return to work. Jones refused, and in January 1991 UPS filed a petition to cease and terminate Jones's benefits, which proceeded before a Workers' Compensation Judge

_____

1. The following facts are drawn from the undisputed statement of facts set forth by the District Court in its memorandum order, and from prior decisions in proceedings related to this appeal.

("WCJ"). Meanwhile, Jones continued his education and ultimately received a B.A. in Heath Policy Administration.

On October 19, 1995, the WCJ granted UPS's petition to terminate Jones's workers' compensation benefits. The WCJ concluded that Jones had "fully recovered from his work injury of December 16, 1988," both mentally and physically. In making this determination, the WCJ evaluated Jones's testimony and the reports and testimony of five physicians, three of whom testified on Jones's behalf. Jones appealed to the Pennsylvania Workers' Compensation Appeal Board. The Appeal Board affirmed the WCJ's decision, holding that:

> Overall, based upon the doctor's examination of December 18, 1990, it was the doctor's reasoned medical opinion that [Jones] was fully recovered and was able to return to his pre-injury job without restrictions as of that date. We find Dr. Casale's report and testimony to constitute substantial, competent evidence sufficient to support the WCJ's determination.

See Jones v. United Parcel, 1997 WL 49126 at *4 (Pa. Work. Comp. App. Bd. Feb. 5, 1997).

Jones next appealed to the Commonwealth Court, which affirmed the Appeal Board's ruling, concluding that "[t]he medical expert testimony that United Parcel presented to the WCJ amply supports the WCJ's finding that Jones had fully recovered from his work-related injuries." Jones v. WCAB (United Parcel), No. 590-CD-1997, slip op. at 4 (Pa. Commw. Ct. Nov. 3, 1997). On May 28, 1998, the Supreme Court of Pennsylvania denied Jones's petition for appeal.

Before the ruling by the WCJ, Jones had contacted the Equal Employment Opportunity Commission (EEOC) concerning "alleged discriminatory action against a person with disabilities." Slip op. at 3. The EEOC advised Jones that he must file a charge of discrimination with the local EEOC office. Five months later, Jones wrote to the local EEOC office. He stated that the "issues involved here concern an ongoing workers' compensation case" and that his grievance against UPS arose because he did not"feel the present offer is a reasonable settlement offer." Id. UPS thereafter retained Cascade Rehabilitation Counseling, Inc.

3

to locate alterative employment opportunities at a sedentary level for Jones. See id. Although Cascade located numerous such sedentary positions in January and February 1995, Jones did not accept any of them. See id. at 4.

In September 1996, following the adverse ruling by the WCJ but before the conclusion of the lengthy appeals process, Jones filed a one count complaint in the District Court against UPS, claiming that UPS violated the Americans With Disabilities Act ("ADA") by failing to provide him with a reasonable accommodation for his return to work. During discovery, Jones continued to assert that he was completely incapable of performing his previous duties due to his slip-and-fall accident. Jones stated that there were no circumstances -- absent UPS providing somebody else to do his job for him -- that would enable him to perform his package car driver responsibilities or any of the other three union positions (tractor-trailer driver, sorter-preloader, and package handler) available under the collective bargaining agreement between UPS and the Teamsters union. At no time did Jones ask anyone at UPS for a reasonable accommodation for his alleged disability, nor did he ever request a lateral transfer to another non-union position at UPS or a promotion to a managerial position. See id. at 2-3.

After discovery UPS moved for summary judgment, arguing, inter alia, that Jones's ADA claim was barred by the doctrine of collateral estoppel or, alternatively, that Jones could not demonstrate that he was a qualified individual with a disability under the ADA. Jones argued that although he was incapable of carrying out his duties as a package car driver, UPS violated the ADA because it denied him alternative employment opportunities and did not reassign him to a vacant position. The District Court concluded that "[w]hat is left is a record that is devoid of any evidence that there were any equivalent positions to which plaintiff could be reassigned as an accommodation. Plaintiff himself concedes that he does not know of any positions at UPS that he would have been able to perform." Id. at 10-11. The District Court therefore granted summary judgment for UPS because Jones failed to meet his burden of proving that he was a qualified individual under the

ADA. In light of this disposition, the District Court did not decide whether Jones's ADA claim was barred by the doctrine of collateral estoppel, although it alluded to the issue in a footnote.

Jones filed a timely appeal but died of cancer, unrelated to his back injury, during the pendency of this appeal. Pursuant to Fed. R. App. P. 43(a) the executor of his estate, Robert E. Jones, has been substituted as appellant.

II.

JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. S 1331 and we have jurisdiction over this appeal pursuant to 28 U.S.C. S 1291. We engage in plenary review of a district court's grant of summary judgment and consider the facts in the light most favorable to Jones. See, e.g., Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 238 (3d Cir. 1999). It was UPS's burden to demonstrate that there were no genuine issues as to any material fact and that it was entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

III.

DISCUSSION

Appellant does not contest the findings of fact set forth in the District Court's opinion, specifically that Jones, who claimed he was incapable of working as a package car driver, failed to make any request for an accommodation, an alternative equivalent position, or a promotion, and that the record is completely devoid of evidence of any equivalent position in UPS to which Jones could have been reassigned as an accommodation. Appellant contends Jones was excused from providing evidence of the existence of a reasonable accommodation because UPS failed to engage in the interactive process required by 29 C.F.R. S 1630.2(o)(3). Appellant cites our decision in Taylor v.

Phoenixville School District, 184 F.3d 296 (3d Cir. 1999), as controlling.

UPS responds by reasserting its position that Jones's ADA claim is barred by the doctrine of collateral estoppel, inasmuch as the WCJ's finding that Jones had completely recovered from his back injuries and could return to his position as a package car driver has been sustained on each of Jones's appeals. UPS also contends that Jones cannot establish that he is a qualified individual under the ADA as he has admitted that he cannot perform the essential functions of the employment position that he held. Finally, UPS contends that Jones's reliance on Taylor is misplaced as none of the four elements set forth in Taylor are present in this case. In particular, UPS contends Taylor supports its position because Jones never initiated the interactive process by requesting an accommodation.

A.

Collateral Estoppel

We must consider at the outset UPS's position that the ADA claim is barred by the doctrine of collateral estoppel. The parties concede that we must provide the same preclusive effect to the WCJ's findings as would the Pennsylvania courts. Under Pennsylvania law, the doctrine of collateral estoppel applies where the following four prongs are met:

> (1) An issue decided in a prior action is identica l to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

Rue v. K–Mart Corp., 713 A.2d 82, 84 (Pa. 1998).

The only question at issue here is the first prong of the analysis: is the issue decided in the workers' compensation proceeding identical to the issue presented here. The WCJ

found that Jones had "fully recovered" from his slip-and-fall injury, a finding sustained on Jones's various appeals, and UPS argues that Jones cannot continue to claim he is disabled as a result of that accident. Appellant responds that "even if the factual issues were identical, because the ADA has different policies, goals and definitions from the Pennsylvania Workers' Compensation Statute, collateral estoppel does not preclude [his] ADA claim." Appellant's Reply Br. at 29.

Pennsylvania law in this respect has recently been refined. Earlier, in Odgers v. Unemployment Compensation Board of Review, 525 A.2d 359 (Pa. 1987), the Court had held that a determination that a teacher work action was a strike for purposes of a state statute authorizing the court to order teachers back to work did not have preclusive effect on the characterization of the action for purposes of employment compensation because the underlying policies and goals of the statutes differed. But more recently, in Rue v. K-Mart Corp., 713 A.2d 82 (Pa. 1998), the Pennsylvania Supreme Court clarified the limits of its holding in Odgers. In particular, the Court stated that when the issue before the Unemployment Compensation Board is a factual issue, differences between the public policies affected by the subsequent civil litigations are irrelevant. As the Court stated: "A fact is a fact, regardless of public policy." Id. at 85. The Court then cited with approval several illustrative examples of the preclusive effect of factual findings in workers' compensation proceedings, including Kohler v. McCrory Stores, 615 A.2d 27 (Pa. 1992) (finding of work-related injury had preclusive effect in subsequent negligence action), Capobianchi v. BIC Corp., 666 A.2d 344 (Pa. Super. Ct. 1995) (finding of no work-related injury had preclusive effect in subsequent products liability action), and Christopher v. Council of Plymouth Township , 635 A.2d 749 (Pa. Commw. Ct. 1993) (finding of no work-related disability had preclusive effect in subsequent action on collective bargaining agreement). See Rue, 713A.2d at 87 n.4.

We predict that the Pennsylvania Supreme Court would follow its decision in Rue under the circumstances here and would give preclusive effect to the factual finding of the

7

WCJ in the workers' compensation proceeding that Jones was fully recovered from his work-related injury, regardless of the differing policies behind the ADA and the Workers' Compensation Act. As this prior proceeding resulted in a final judgment, to which Jones was a party and had a fair and full opportunity to litigate, and indeed litigated it through the Pennsylvania courts, Jones is barred by Pennsylvania's doctrine of collateral estoppel from challenging this factual finding in his ADA claim. We are therefore required by 28 U.S.C. S 1738 to consider Jones's ADA claim in light of the irrefutable fact that as of December 1990 Jones had fully recovered from his work-related injury and was able to return to his position as a package car driver.

B.

ADA Claim

Because Jones is precluded from re-litigating his recovery from the slip-and-fall accident, Jones's ADA claim fails as a matter of law. The ADA prohibits covered employers from discriminating against a "qualified individual with a disability" because of the disability of such an individual. See 42 U.S.C. 12112(a). It is, of course, an axiom of any ADA claim that the plaintiff be disabled and that the employer be aware of the disability. Arguably, Jones may have suffered from a different disability (i.e., his undiagnosed cancer). However, this contention was never presented to the District Court, nor is there any indication or even an allegation that UPS was made aware of "possible" unrelated disabilities. Furthermore, it is clear from Jones's complaint and deposition testimony that the core of his ADA claim is the allegation that he remained disabled as a result of his 1988 work-related injury and that UPS failed to provide a reasonable accommodation for that disability.

Jones is under the burden of demonstrating that he has a disability under the ADA before any claim can proceed to trial. See, e.g., Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). At summary judgment, a plaintiff

8

cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In light of Jones's full recovery from his work-related injuries, Jones's ADA claim would fail as a matter of law as he has provided no other evidence that he was "disabled" under the ADA.

UPS contends that even if the doctrine of collateral estoppel were inapplicable in this case, Jones's ADA claim nevertheless fails as he admitted there are no reasonable accommodations on the part of UPS that would have made it possible for Jones to perform his position as a package car driver. Appellant does not contest that fact. See Appellant's Br. at 21 ("Mr. Jones did not dispute his inability to return to his former position of package car driver, given his disability."). He insists, however, that the only relevant accommodation would have been to transfer Jones to a different position at UPS, and that had UPS fulfilled its obligation to engage in the interactive process, the parties could have identified transfer positions as a reasonable accommodation.

The ADA's regulations provide that: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of the accommodation." 29 C.F.R. S 1630.2(o)(3). The goal of the interactive process is to help identify the precise limitations of the employee's disability and the potential options that could reasonably accommodate those limitations. The EEOC's interpretive guidelines establish the circumstances that trigger the employer's duty to engage in this interactive process: "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. Pt. 1630, App. S 1630.9 at 361.

Appellant relies on our decision in Taylor v. Phoenixville School District, 184 F.3d 296 (3d Cir. 1999), in support of

9

his argument that UPS failed to engage in the interactive process required by the ADA. However, Taylor is distinguishable on its facts. Katherine Taylor, the plaintiff, had worked as a school principal's secretary for twenty years before suffering the onset of bipolar disorder which resulted in her hospitalization at a psychiatric institution and subsequent leave of absence. Taylor's son informed the school that doctors had diagnosed his mother with bipolar disorder and told them that she " `would require accommodations when she returned to work.' " Id. at 303. However, when Taylor returned to work, the school offered no accommodation, but instead began documenting her errors and eventually terminated her employment.

Taylor filed an ADA action; the district court granted summary judgment for the defendant, finding that the only accommodation Taylor specifically requested, a transfer to another position, was not possible. We reversed, holding that Taylor had presented sufficient evidence to create an issue of material fact as to whether the school had failed to engage in the interactive process. We stated that to show that an employer has violated its duty to engage in the interactive process, a disabled employee must demonstrate: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Id. at 319–320.

Unlike Taylor, Jones never requested an accommodation or assistance for his disability; he not only never requested to return to his old position as a package car driver, he never asked for either one of the other jobs available under his union contract or any other position with UPS. Appellant nevertheless contends that UPS had "sufficient constructive notice of Mr. Jones' desire for accommodation," Appellant's Reply Br. at 14, because it was aware of Jones's belief that he could not return to his former manual labor job and that his disability precluded him from returning to work at UPS. We disagree because appellant has not provided any evidence to suggest that

10

UPS should have known that Jones sought an accommodation. As we stated in Taylor, "while the notice [of a desire for an accommodation] does not have to be in writing, be made by the employee, or formally invoke the magic words `reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability." Taylor , 184 F.3d at 313. The record reflects that the only request made by Jones of UPS was for continued payment of disability benefits. Because there is no evidence from which a request for accommodation could be inferred, UPS was under no legal obligation to engage in the interactive process.

IV.

CONCLUSION

For the reasons set forth above, we will affirm the judgment of the District Court.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

11