

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2005

# Straining v. AT&T Wireless Ser

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2688

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Straining v. AT&T Wireless Ser" (2005). *2005 Decisions*. Paper 833.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/833

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2688

———

LINDA A. STRAINING,
                                        Appellant

v.

AT&T WIRELESS SERVICES, INC.

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:CV-02-0002)
District Judge: The Honorable Yvette Kane

———

Submitted Under Third Circuit LAR 34.1(a)
Date: July 14, 2005

Before: ALITO, VAN ANTWERPEN and ALDISERT, Circuit Judges

(Filed July 18, 2005)

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

1

The question for decision is whether the United States District Court for the Middle District of Pennsylvania improperly granted summary judgment in favor of AT&T Wireless Services ("AWS") in an employment discrimination action brought by Linda A. Straining. She sued under the Age Discrimination in Employment Act ("ADEA"), 27 U.S.C. §§ 621-634 (2000), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963 (1991).

The District Court concluded that Straining failed to establish a prima facie case of age or disability discrimination in her failure to obtain a Customer Service Representative ("CSR") or Statistical Administrator ("SA") position; and alternatively, even if she had established a prima facie case, she failed to establish pretext. In addition, the Court granted summary judgment on a retaliation claim because there was no evidence that a complaint filed by Straining with the Pennsylvania Human Relations Commission motivated AWS's decision to cancel her health benefits.

Straining argues that there are genuine issues of material fact that prohibit the entry of summary judgment. We disagree and will affirm.

I.

Because we write only for the parties who are familiar with the facts and the proceedings in the District Court, our discussion will be limited.

II.

Straining worked as a data entry clerk for Vanguard Cellular One before the company merged with AWS in May 1999. In June 1999, Mary Lou Colarossi, her immediate supervisor, informed her that the operations department would be closed as a result of a merger and explained that current employees should apply for positions with AWS, the surviving company. Straining was told that the operations department would be closed by the end of March 2000.

In January 2000, Straining applied with AWS for both CSR and SA positions. She argues that AWS's refusal to hire her for each position constituted legal age and disability discrimination. The company's response was twofold: (1) Straining did not qualify for either position; and (2) hiring decisions were made by individuals who were unaware of her age or her rheumatoid arthritis condition, the alleged disability.

III.

All three of the discrimination statutes under which Straining brings her claim are analyzed under the McDonnell Douglas framework when there is no direct evidence of discrimination, as is the situation in this case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, a plaintiff must establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she was qualified for the job; (3) the employer refused to hire her despite those qualifications; and (4) the job remained open and the employer sought applicants with her qualifications. Id. at 802. Once the plaintiff presents a prima facie case, the burden of production shifts to the

employer to come forward with legitimate nondiscriminatory reasons for its actions. Id. If the employer meets this burden, the burden of production then shifts back to the plaintiff to show that the employer's proffered nondiscriminatory reasons are pretextual. Id.

IV.

The CSR position of AWS was not the same as its counterpart in Cellular One. To qualify, an applicant was required to earn passing scores on both the Hogan Personality Test and the "following directions" test, consisting of 30 multiple choice questions. A raw score of at least 17 or 21 out of 30 was required, depending on the applicant's personality test rating. Based on Straining's personality test score—and apparently this was satisfactory—she needed to answer only 17 questions correctly. She accurately answered only 16.

To support her contention that she in fact scored well, Straining relied on an expert report from Terry Leslie to argue that there are genuine issues of material fact. Unfortunately, Leslie examined only a black and white photocopy of her actual test. Because the copy that was examined was not in color, the expert was unaware that Straining's wrong answers were filled in red by the test rater showing the questions she missed.

Accordingly, Straining did not establish a prima facie case under the McDonnell Douglas framework because she failed to show that she was qualified for the CSR position. Even if she could establish a prima facie case, AWS articulates a legitimate,

non-discriminatory reason for its decision: It reasonably believed she was not qualified for the CSR position.

Straining produced no evidence that AWS's decision not to hire her was based on age or disability. Although Colarossi was aware of her disability and sympathetic to her condition, nothing on the record indicates that Richard Fino, the individual who scored the "following directions" test, acted with animus or even that he was aware of the disability.

There is no evidence from which a reasonable fact finder could believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).

V.

To prove employment discrimination based on disability, the plaintiff must demonstrate that she has a disability. Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002); Olson v. GE Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). This Circuit has held that this requirement necessarily implies that the plaintiff also must demonstrate that the employer knew of the disability. Jones v. UPS, 214 F.3d 402, 406 (3d Cir. 2000) ("It is, of course, an axiom of any ADA claim that the plaintiff be disabled and that the employer be aware of the disability."); see also Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002).

In Olson, 101 F.3d at 954, we explained that knowledge of one party cannot be imputed to another who is making the hiring decision. Because Straining's sole allegation is that Colarossi knew of her disability, and Colarossi was not involved in the hiring process for the SA position, Straining failed to establish that those involved in the hiring decision knew of her disability. Thus, Straining failed to make out a necessary element of her prima facie case.

VI.

To establish retaliation a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1999). AWS emphasizes that it notified Straining on April 14, 2000 that her benefits would be terminated on June 14, 2000 unless she took a severance package. She elected not to.

Straining did not file a PHRC complaint until June 20, 2000, a week after her benefits had been terminated. AWS was not served with the complaint until July 27, 2000. It was not possible for the employer's termination of benefits to have been caused in any way by Straining's PHRC complaint because it is undisputed that she had not yet filed her complaint when the termination of benefits occurred. See Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 516 (3d Cir. 2004) (noting that it is not possible to meet the

retaliation standard when the adverse employment action precedes the protected activity).

That she continued to receive insurance benefits after the date she was notified that they would be terminated, unless she applied for a severance package before that date, is not material. AWS had decided in April 2000 that her benefits would be terminated on June 14 and the PHRC complaint was not filed until June 20.

\* \* \* \* \*

The judgment of the District Court will be affirmed.