NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2764
_____

LARRY WARD,
                              Appellant

v.

INGERSOLL-RAND COMPANY
TRANE U.S. INC.

_____

On Appeal from the United States District Court for the
District of New Jersey
(D.C. No. 3:15-cv-00327)
District Judge:  Honorable Michael A. Shipp

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 23, 2017

Before:  CHAGARES, RESTREPO, and ROTH, <u>Circuit</u> <u>Judges</u>.

(Opinion Filed: April 28, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

CHAGARES, Circuit Judge.

Plaintiff Larry Ward appeals the District Court's order granting Trane Ingersoll-Rand Company's and Trane U.S. Inc.'s (collectively, "Trane") motion for summary judgment on his retaliatory termination claims. Because there is insufficient evidence to raise a genuine issue of material fact as to Ward's claims and because Trane is entitled to judgment as a matter of law, we will affirm.

I.

Trane employed Ward as a machinist beginning in August 2008.[1] In May 2013, Ward injured his finger while at work. Ward reported the injury and filed a workers' compensation claim. The injury required surgery, and Ward was placed on medical leave for seven weeks. Trane accommodated Ward after his return to work in July 2013 by assigning him certain light-duty tasks. Ward resumed regular work activity on September 4, 2013.

As an employee, Ward was subject to Trane's discipline and discharge policy. Pursuant to the policy, an employee will be discharged if he receives four "disciplinary Warning Notices with not more than a twelve . . . month period between any consecutive Warning Notice." Appendix ("App.") 148. A Warning Notice is a written "formal record of the infraction and discipline administered," App. 147, issued for misconduct such as "[p]oor job performance/workmanship," "[f]ailure to be at workstation and ready

_____

[1] Because we write solely for the parties, we recount only the facts relevant to our decision.

2

to work at the beginning of the shift and immediately after break periods," and "[e]ating or having uncovered food or drink in the plant," App. 151-52. Supervisors may also issue a verbal warning for minor policy infractions; these verbal warnings are documented but do not count toward the notices that, when accumulated, lead to discharge. Finally, an employee may be temporarily suspended for "more serious violations" and for receiving multiple disciplinary notices. App. 147.

Prior to his injury, Ward had received two Warning Notices: on April 13, 2012, for colliding with a pole while operating a forklift; and on February 6, 2013, for operating a forklift without wearing a seat belt. These Warning Notices followed five verbal warnings Ward received between July 2010 and April 2012 for infractions including "excessive absenteeism" and tardiness. See App. 62-63.

Ward's disciplinary issues continued after his return from medical leave. Supervisors gave Ward two verbal warnings in August 2013 and on September 24, 2013, issued him a Warning Notice for arriving late to his workstation from a midday break. Ward had been at the nurse's office receiving treatment for his injury. This discipline followed a meeting held the prior day at which Trane managers reminded employees of the importance of being at their workstations on time.

On October 21, 2013, Ward received another Warning Notice for eating at his workstation. This, too, followed several verbal warnings from Ward's supervisors in response to similar conduct, and at least one instance in which an administrator declined

3

to discipline Ward to spare him from termination.[2]  Because the October 2013 Warning Notice was Ward's fourth, he was fired.

After Ward's discharge, his union grieved the September 2013 Warning Notice, eventually arbitrating the dispute.  On July 14, 2014, the arbitrator ruled for Ward, citing "confusion" in the disciplinary process.  App. 458-60.  The arbitrator also concluded that "[t]he record does not support or in any way indicate . . . that [Ward] was singled out for disparate treatment in retaliation for his having filed a Workers['] Compensation claim, or that he was otherwise subjected to any disparate treatment."  App. 459.  As a result of the ruling, Trane reinstated Ward, who returned to work on July 18, 2014.[3]  At this time, Ward had three active Warning Notices.

Ward received verbal warnings for leaving his work area without permission on July 24, September 3, September 4, and September 5, 2014.[4]  On one of these instances, Ward defied the express order of his supervisor to remain at his workstation, resulting in the temporary shutdown of the factory line on which Ward worked.  The multiple infractions resulted in Ward's suspension and, ultimately, a fourth Warning Notice. Ward was terminated on October 6, 2014.

---

[2] In fact, Ward's supervisor described Ward as one of the "worst offenders" in terms of violating the prohibition against eating at his workstation, recalling that he had warned Ward approximately five to seven times.  App. 73.

[3] Trane had also issued another Warning Notice to Ward for acting inappropriately at his termination meeting, but the notice went unenforced after Ward's reinstatement. Trane explains that it sometimes documents infractions that occur even after an employee is terminated in case the termination is later reversed, as it was for Ward.

[4] Trane maintains it was also aware of Ward leaving his workstation on a number of occasions for which a manager decided not to issue any warning.  Ward's supervisor testified that no other subordinate left his or her workstation as often as Ward.

4

Following his termination, Ward filed a complaint against Trane alleging that he was disciplined and fired (1) for seeking a medical accommodation and because of his disability, in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 ("NJLAD"), (2) in retaliation for making a workers' compensation claim in violation of common-law wrongful discharge doctrine, and (3) in retaliation for requesting medical leave in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"). Trane moved for summary judgment, and on May 24, 2016, the District Court granted the motion as to all claims. Ward timely appealed.

## II.[5]

Ward argues, inter alia, that the District Court erred in (1) failing to apply the direct-discrimination standard when analyzing his claims, and (2) concluding that, as a matter of law, the evidence fails to establish that the defendants' proffered reasons for terminating Ward were pretextual.

### A.

Ward argues that the District Court used an inappropriate standard to assess his retaliation claims. He contends that the record contains direct evidence of Trane's

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

Our review of the Court's grant of summary judgment is plenary. Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015). Summary judgment is appropriate "where no genuine dispute exists as to any material fact, and the moving party is entitled to judgment as a matter of law." Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013). We must view the evidence in the light most favorable to the non-moving party. Anderson v. Consol. Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002).

retaliatory motive; therefore, the Court erred by applying the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[6] We disagree.

We assess discrimination claims supported by circumstantial evidence under the McDonnell Douglas standard, "while claims based on direct evidence have been assessed under the mixed-motive framework set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 276-77 (1989) (O'Connor, J., concurring)."[7] Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012). A plaintiff will have direct evidence of discrimination "only rarely." Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996). Evidence is direct if it "demonstrates that the decisionmakers placed substantial negative reliance on [the protected activity] in reaching their decision" to fire the plaintiff. Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) (quotation marks and citation omitted). It entails more than an inference of discriminatory motive and instead "leads . . . to a rational presumption that the person expressing bias acted on it." Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2004) (citation omitted); see also Glanzman v. Metro. Mgmt. Co., 391 F.3d 506, 512 (3d Cir. 2004) (describing evidence as direct where it shows "discriminatory attitudes" about a protected activity that "were causally related to the decision to fire [the plaintiff]").

---

[6] The parties do not dispute that federal law standards apply to Ward's claims.

[7] We have declined to decide whether mixed motive claims remain possible under the FMLA in light of Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009), a case pertaining to age discrimination. Ross v. Gilhuly, 755 F.3d 185, 193 & n.12 (3d Cir. 2014). We need not reach the question here because even assuming that such a claim remains possible, Ward failed to produce direct evidence of Trane's retaliatory motive.

The only allegedly direct evidence of Trane's motive that Ward offers is testimony from Toliver, Ward's supervisor at the time of his final termination. When asked if he had reason to believe that Trane retaliated against Ward because of Ward's workers' compensation claim, Toliver recounted a "conversation with Jason [Perelman, a Human Resources employee]" in which Toliver was notified about Ward's pending return from medical leave and was instructed to "keep an eye on him."[8] App. 756-57. Taken as true, the statements by Perelman support Ward's contention that he was targeted for disciplinary action. They do not establish, however, that Ward was targeted <u>because of</u> his workers' compensation claim and medical leave — indeed, Toliver admits that he only inferred that the instruction to monitor Ward was related to Ward's medical leave. Because Ward did not offer direct evidence of discrimination, the District Court did not err in applying the <u>McDonnell Douglas</u> standard.

B.

Ward next cites a litany of evidence which he contends makes summary judgment inappropriate. Under the <u>McDonnell Douglas</u> standard, courts first determine whether the plaintiff is able to establish a prima facie case of discrimination. "If the plaintiff succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a

---

[8] Specifically, Toliver asserts that Perelman told him: "I have Larry Ward coming back. He's an employee that was injured. He's a guy that we want to keep an eye on, and if there's anything this guy does outside of the work rules, I want to be made aware, that kind of thing." App. 757.

preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." Capps v. Mondelez Global, LLC, 847 F.3d 144, 152 (3d Cir. 2017).

To establish pretext, the employee must "point to some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1144 (N.J. 2005). It is not enough to show that the employer was "wrong or mistaken"; rather, the "plaintiff must demonstrate such 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons.'" Ross v. Gilhuly, 755 F.3d 185, 194 n.13 (3d Cir. 2014) (quotation omitted) (alteration in original). As we discuss below, the evidence Ward cites fails to undermine the defendants' proffered nondiscriminatory reasons[9] for disciplining and firing Ward.

1.

Ward separately challenges the September 2013 Warning Notice he received for returning late to his workstation from break. Ward was tardy because he had visited the nurse to re-bandage his injured hand. According to Ward, Trane in fact disciplined him

---

[9] Ward appears to contest that Trane proffered a legitimate, nondiscriminatory reason for its decision to discipline him. This argument fails: Ward does not dispute that returning late from break is sanctionable conduct pursuant to Trane's workplace policies, nor that he was in fact late.

"in retaliation for seeking an accommodation" in the form of treatment for his injury and, more generally, for his medical leave and workers' compensation claim.[10] Opening Br. 26, 27. This argument is unavailing. Even assuming Ward overcomes the burden of establishing a prima facie case of discrimination, the evidence Ward propounds does not create a material issue of fact as to whether Trane's rationale for disciplining Ward — that is, his tardiness — was pretextual.

First, Ward maintains that his supervisors were aware that he was visiting the nurse. This fact is inapposite. That supervisors knew where Ward was going on his break does not obviate their concern that he was tardy returning from it.

Second, Ward contends that colleagues were not similarly disciplined for leaving their workstations. This argument is easily dispelled by the record. Several other employees were disciplined for their tardiness, including a co-worker who was disciplined on the same day as Ward for being even less tardy.[11]

---

[10] Additionally, to the extent Ward argues that the defendants failed to accommodate his injury, his claim fails because Ward does not demonstrate that he requested accommodation for his medical needs. See Tynan v. Vicinage 13 of Super. Ct., 798 A.2d 648, 656-57 (N.J. Super. Ct. App. Div. 2002). Ward admits that he did not have a doctor's note recommending extended breaks for treatment even though one was required, and that changing his bandages only took "2 to 3 minutes," easily encompassed by the 15-minute break he was allotted, App. 70-71, App. 555. A reasonable factfinder could not conclude that Ward's tardiness was a medical need which Trane would be obligated to accommodate, let alone that Trane was aware that Ward expected as much. Jones v. United Parcel Serv., 214 F.3d 402, 408 (3d Cir. 2000) (holding that "[b]ecause there is no evidence from which a request for accommodation could be inferred," the employer was under "no legal obligation" to accommodate the employee's disability).

[11] Ward faults the District Court for relying on evidence that Trane disciplined employees for committing the same infractions as Ward without considering whether those employees were similarly situated to Ward. But the District Court was entitled to consider whether Trane gave "inconsistent reasons . . . for terminating the employee or

Third, Ward cites as suspect Human Resources' decision to discipline Ward without investigating the incident or giving Ward an opportunity to defend himself. But Human Resources did consider Ward's visit to the nurse when deciding whether to issue the Warning Notice. The fact that an arbitrator overturned the discipline because of problems with how the discipline was administered does not evince that Trane's true motives were invidious. In other words, Trane's alleged haste to discipline Ward for his tardiness does not, without more, belie that tardiness in fact motivated the discipline.

Fourth, Ward claims he was disciplined "contrary to [his supervisor]'s own management practices" of allowing employees to freely come and go from their workstations. Opening Br. 10. His supervisor actually stated that Trane was "very particular" about expecting its employees "to take their breaks . . . and return in a timely manner," and that he would only allow employees to leave workstations to use the restroom or get a drink so long as it was not "excessive." App. 594. The supervisor further explained that Ward was disciplined because he "was late [returning from break] numerous times." App. 71. Moreover, regardless of typical practices, senior managers instructed supervisors (including Ward's) the day before Ward's discipline to strictly enforce timeliness rules. Ultimately, the evidence here would not support a factfinder

the employer's treatment of other employees" when assessing whether Ward could establish that Trane's justifications were pretext. Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007). In fact, evidence that other employees disciplined by Trane were similar to Ward would bolster the District Court's conclusion that Ward's medical leave and workers' compensation claim were not the motivating factors behind Trane's decisions. Trane proffered evidence showing that it consistently disciplined and even terminated numerous other employees for violating the same polices as Ward, on which the District Court justifiably relied in reaching its conclusion that Ward's claims failed as a matter of law.

disbelieving that Trane disciplined Ward because he was tardy, let alone concluding that Trane acted because of Ward's disability or medical leave.

2.

In addition to his specific challenges to the September 2013 Warning Notice, Ward argues that evidence of Trane's "animosity" toward him and the close temporal proximity between Ward's medical leave and Trane's adverse employment actions establish discriminatory pretext. To prevail, Ward must produce some evidence "sufficient to create an inference that a causative link exists between [his medical] leave and [his] termination." Lichtenstein, 691 F.3d at 307. Indeed, "evidence of ongoing antagonism" and unusually suggestive timing may support the inference that an employer took an adverse action because of an employee's protected activity. Capps, 847 F.3d at 152 n.6. Neither, however, is demonstrated by the evidence here.

"Ongoing antagonism" may include evidence of unusually close supervision or aggressive discipline. See, e.g., Robinson v. Se. Pa. Transp. Auth., Red Arrow Div., 982 F.2d 892, 895 & n.2 (3d Cir. 1993). The principal evidence supporting Ward's contention is his own testimony that he felt targeted following his medical leave and after his reinstatement in 2014, a perception which his supervisor shared. But Trane's actions do not amount to a "constant barrage of written and verbal warnings . . . and disciplinary action, all of which occurred soon after [Ward]'s [protected activity] and continued until his discharge." Id. at 895. Moreover, there is no indication that Trane's treatment of Ward changed after his medical leave. Cf. Abramson, 260 F.3d at 270, 288 (holding that an inference of discrimination existed where a supervisor's demeanor toward the plaintiff

"changed dramatically" after the plaintiff's complaint). Prior to his injury, Ward was subject to several disciplinary actions by his supervisors, and "[a]n employee cannot easily establish a causal connection between his protected activity and the alleged retaliation when he has received significant negative evaluations before engaging in the protected activity." Ross, 755 F.3d at 194. Indeed, much of Ward's misconduct went unaddressed or only resulted in informal warnings, suggesting that rather than targeting him for termination Trane supervisors afforded Ward multiple opportunities to avoid discipline. The record does not support an inference that Ward's medical leave motivated Trane's ensuing decisions about him.

Nor does the timing of Trane's actions sustain Ward's claims. A close temporal proximity between a protected activity and an adverse act may support an inference of causal relationship where the timing is "unusually suggestive." Cardenas v. Massey, 269 F.3d 251, 264 (3d Cir. 2001) (citation omitted).[12] Ward returned from medical leave in July 2013 and was first disciplined on September 24, 2013, over two months later[13] — a

---

[12] We have explained that the timing of an adverse employment action may support establishing the causation prong of a plaintiff's prima facie case, Shaner v. Synthes, 204 F.3d 494, 505 (3d Cir. 2000), or raising an inference that the defendant's proffered motive was pretext for discrimination, Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 639 (3d Cir. 1993). For purposes of our discussion here, the stage of the burden-shifting framework is immaterial. At base, Ward must point to evidence that creates a material issue of fact as to whether Trane disciplined or fired him for his taking medical leave or seeking workers' compensation. The temporal proximity of Trane's adverse act is insufficient to meet this burden and fails to sustain either a prima facie case or an inference of pretext.

[13] Ward insists that the relevant date from which to measure the proximity of the disciplinary action is September 4, 2013, the date on which he resumed regular duty. But he provides no support for why we should discount the several weeks prior to that, when Ward had started working light duty. Ward similarly does not explain why we should

timespan which by itself does not support a casual inference.  Cf. Jalil v. Avdel Corp.,

873 F.2d 701, 708 (3d Cir. 1989) (inferring causation where the employer fired the

plaintiff two days after the plaintiff filed a complaint); LeBoon v. Lancaster Jewish

Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (concluding that three months is not

unusually suggestive); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760

(3d Cir. 2004) (concluding that two months is not unusually suggestive).  To find for

Ward, a juror would need additional evidence of animus.  LeBoon, 503 F.3d at 232

(citation omitted) ("Where the temporal proximity is not 'unusually suggestive,' we ask

whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference'

[of discrimination]."); Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005) (inferring

causation where two-and-a-half months separated the protected activity and adverse

action and where there was additional evidence of retaliatory animus).  There is no such

evidence in the record.  Accordingly, we find no material issue of fact precluding

summary judgment on Ward's claims.[14]

III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

separately consider the time between his July 2014 reinstatement and his final
termination in October of that year, given that he claims retaliation for his earlier medical
leave and workers' compensation claim.  Even if we were to measure his firing from his
2014 reinstatement, our conclusion that the timing is not by itself sufficient to support an
inference of discriminatory intent remains the same.

[14] Ward's other arguments have been considered and do not change our
disposition.